### William Spencer Steinsultz, Appellee, v. Illinois Bankers Life Association, Appellant.

1. INSURANCE—*issues raised by general issue in action on policy.* In an action upon a policy of life insurance, the general issue denies the existence of a valid policy and places in issue the question as to whether the insured was in good health at the time of the delivery of the policy.

2. INSURANCE—*good health of insured as condition precedent to effectual delivery of life policy.* Recovery is barred in a suit on a life insurance policy for want of valid, effectual delivery within the meaning of a provision of the application which was made a part of the policy and to which the insured agreed, that the policy "shall not take effect until * * * actually delivered to me during my continuance in good health," as she then represented her condition to be, where her family physician testified that for four years prior to the signing of the application insured had suffered from and been treated by him for gall stone trouble, that her condition continued until her death, which occurred a year after the claimed delivery of the policy, and that a few months before her death an operation was performed on her and numerous gall stones removed, which were of a type which medical experts testified required years for their formation, and where there was no evidence of good health at the time of the claimed delivery of the policy except that of nonexpert witnesses as to her physical appearance.

Appeal by defendant from the Circuit Court of Macon county; the Hon. JAMES S. BALDWIN, Judge, presiding. Heard in this court at the October term, 1922. Reversed with finding of facts. Opinion filed January 17, 1923.

WILLIAM K. WHITFIELD, JESSE L. DECK, W. THOMAS COLEMAN and L. E. STEPHENSON, for appellant; ROBERT M. WORK, of counsel.

LAWRENCE C. WHEAT, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

On the 20th day of May, A. D. 1920, Myrtle May Steinsultz, wife of appellee, applied for insurance in the company of the defendant below, appellant herein. A policy was issue and turned over to the applicant on June 1, 1920, and on June 5, 1921, Myrtle May Steinsultz died. The policy was payable to William Spencer Steinsultz, husband, and appellee filed suit in the circuit court of Macon county to the October term, A. D. 1921, in and by his declaration and a special count declaring upon the said policy of insurance, the substantial provisions of which necessary for the decision of this case are as follows:

"$100,000.00 Deposited with Illinois Insurance
Department.

No. 110957            Age            $1000.00
                       48
            Illinois Bankers Life Association of
                 Monmouth, Illinois,
Incorporated under the
laws of the State of
Illinois,
                    Hereby insures
            `      Myrtle May Steinsultz
of Decatur, State of Illinois,
                 and agrees to pay
        William Spencer Steinsultz, Husband
of the Insured (herein called the Beneficiary) and in the event of the Beneficiary's prior death (no other Beneficiary having been named) to the Insured's legal representatives,
            The Sum of One Thousand Dollars,
less any benefits hereunder paid to the Insured, within sixty days after receipt of due proofs of the death of the Insured to be furnished by the Beneficiary. This insurance is granted in consideration of the written and printed application and medical examina-

tion for this policy, which are made a part of this con-
tract, and the payment in advance of
    Twenty and 50-100 Dollars
as a first payment, receipt whereof is hereby acknowl-
edged, which pays until January 1, 1921, with grace
as herein provided, and the payment of all subsequent
amounts required under this contract at or before the
time when due and payable and during continuance
of this contract.

"The Conditions, Provisions and Benefits printed or
written on the back hereof are a part of this contract
as fully as if recited over the signatures hereto affixed.

"In Witness Whereof, the Association has hereto
affixed its seal and caused this Contract to be signed
by its President and Secretary at Monmouth, Illinois,
this First day of June, 1920.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .
        President

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .
        Secretary."

The copy of the application and medical examina-
tion were attached to the policy and formed a part of
the policy of insurance, and we submit such portions
of the same as seem to be necessary for a considera-
tion of this case.

"I fully understand that the cash payment hereon
will be $20.50 and that the Annual rate is $26.96.  First
quarterly payment will be due 31st Jan. 1921, and quar-
terly thereafter unless I elect to pay semiannually or
annually.  *I agree to accept the Policy issued here-
on and that the same shall not take effect until the first
payment shall have been made and the Policy issued
and actually delivered to me during my continuance
in good health.*"

"13.  Q.  Are you now in good health and free
from disease?  A.  Yes.

"Q.  Have you ever had any disease of the follow-
ing named organs or any of the following named dis-
eases or symptoms—gall stones?  A.  No.

"Q.  How long since you last consulted a physician?
A.  Two years ago.

"Q.  For what disease?  A.  Headache.

"Q. Give the name and residence of such physician. A. Dr. Myers, Decatur.

"Q. Was recovery complete? A. Yes."

Together with other and various questions and answers being a part of said application and medical examination, all of which formed a part of said policy of insurance and were fully set out in said declaration.

Plaintiff averred that for a good and valuable consideration paid by said Myrtle May Steinsultz the said instrument and life insurance policy was on the said first day of June, A. D. 1920, delivered by said defendant to the said Myrtle May Steinsultz, and that during her lifetime she kept and performed and carried out all of the provisions and covenants in and by the terms of said policy required by her, said Myrtle May Steinsultz, to be performed on her part.

The declaration averred the death of insured, the making and forwarding of proofs of death, as required by said policy, and said first count of the declaration, as aforesaid, specially counted upon said policy of insurance and matters as set out. In addition thereto, plaintiff filed the common counts.

Appellant by pleas filed the general issue and various special pleas, to which there were replications. The necessity for setting them out in particularity at this time does not appear.

The cause was tried by a jury. Plaintiff, to maintain his cause, submitted and identified the policy of insurance and identified the insured, Myrtle May Steinsultz, as his wife, and testified that she died in the month of June, 1921, and that she was the same person named in the policy of insurance and identified himself as the same person named as the payee in the policy of insurance, and established the fact of the payment of all premiums, as provided in the policy of insurance, and testified to the making of proofs of death and delivering the same to the appellant and plaintiff rested his case.

The evidence in this case produced on behalf of ap-

pellant by Dr. N. D. Myers tended to show that he was a physician of the regular school and had been in practice for fifty years, and that he had been the family physician of Myrtle May Steinsultz. He testified that he commenced to treat her back in 1916 and from that time on up to a time just previous to her death, which occurred in 1921. Dr. Myers stated that she had what she called "indigestion," that is, colic spells from the condition of the liver. Dr. Myers said that she was suffering from gall stone colic and he described gall stone colic as gall stones in the gall bladder and in the liver, that they get down into the pelvis or duct that leads from the liver to the duodenum or small stomach. Sometimes they are small enough to go through that duct and pass out and pass away. Sometimes they are too large and outgrow that duct and then the patient has what is called "gall stone colic."

Dr. Myers stated that he treated the insured for the same trouble, gall stone colic, in 1917, and testified that sometimes when these gall stones were present they kept the bile from flowing out of the gall bladder, producing symptoms of jaundice; not very much, because there was not enough bile that came out into the system to produce very much jaundice; states that he observed a jaundiced condition as one of the symptoms of the trouble and that there was not very much jaundice in the case until after the operation; until the gall bladder got so diseased and occluded it stopped up and the bile got into the stomach. Dr. Myers testified that there were symptoms of pain on these occasions; that he visited Mrs. Steinsultz and that there is always more or less pain in this gall stone colic. Dr. Myers testified that in 1918 he treated Mrs. Steinsultz for the same trouble and that these same troubles came on, just a continuation of the same trouble, and that it got so bad they had to have an operation; that it was continuous all the way through only that the symptoms got worse because the gall stones got larger in the

bladder and produced more trouble. He states that he treated her in 1919 for the same trouble and testified that in 1919 the symptoms indicated there were large gall stones in the bladder; that the symptoms increased and that the symptoms of pain increased in proportion and continued longer as the gall stones grew in the gall bladder, as they do, by concretions being added to them.

Dr. Myers testified that he made a diagnosis of the insured as to what brought on these spells in 1919 just the same as he had in 1916, 1917 and 1918, and that it was continuous of the same trouble only that each time it would come a little worse.

Dr. F. E. Smith testified in behalf of the defendant. He was a graduate of Chicago College of Medicine and Surgery and had practiced his profession for eight years. He testified that he knew Myrtle May Steinsultz in her lifetime, having become acquainted with her about the 13th or 14th of November, 1920; that at that time he was called to her house and that he made an examination of the insured at that time. Dr. Smith found her in bed, suffering quite a bit of pain and on physical examination Dr. Smith made the diagnosis of gall stone colic, and states that the symptoms of gall stone colic are usually that the patient had intense pain and tenderness over about the end of the ninth costal cartilege, the pain radiating along the right shoulder blade; nausea and often times vomiting; headache occasionally.

At this time the insured stated to Dr. Smith that she had been under the care of Dr. Myers and had had similar attacks to the one under which she was suffering at that time, which were diagnosed as she termed as "acute indigestion." Dr. Smith went fully into the subject of gall stones and gall stone colic and into the symptoms of the insured, and stated that he found her in bed suffering quite a bit of pain, quite a bit of nausea and thinks she had vomited some, probably not

right at the time he was there, and stated that she had pain over the region of the gall bladder, also radiating back along the right shoulder blade and back.

An operation was performed upon the insured by Dr. Smith on November 15, 1920, and he states that upon opening the abdominal cavity he found the gall bladder with some stones in it and testified that, ''What we call a coli cystillectomy, or removal of the gall bladder was done, and that was all.'' Dr. Smith describes the stones and states there were five or six stones, the largest he believes of which were about the size of the end of your finger, possibly three-eighths of an inch to a half inch in diameter. He describes the shape of them as being fairly round. Most of them were of the round kind and with reference to their formation they were more of a compact type stone. Some of them were found and he does not recall whether any of them were octagon in shape or not. He stated the stones were fairly solid. Dr. Smith testified that the gall bladder was thickened and had some adhesions upon it showing that there had been an inflammatory process there. He testified that in his opinion the presence of gall stones would cause the thickened condition of the gall bladder. Whether the gall stones were quick in forming or slow in their formation depends, Dr. Smith says, on the condition of the gall bladder and the condition of the blood, and says that gall stones are usually slow in forming.

Dr. H. E. Parsons testified to substantially the same matters; that he first became acquainted with the insured in the summer or fall of 1920, and that he assisted Dr. Smith in the operation.

Dr. Whitney Hall of Chicago testified. Dr. Hall was a physician and surgeon of wide experience and his testimony covered the expert opinion phase of the case. The substance of Dr. Hall's testimony was that the condition of the insured, the nature of the gall stones found in the operation and her physical condi-

tion prior to that time, the indigestion, the headaches and the other physical expressions of ailments, demonstrated conclusively that she had suffered from gall stones from a period long prior to May, 1920.

We have recited this evidence and testimony not as establishing the facts conclusively but as testimony tending to establish such facts and to set out the nature of the case at bar for the purpose of applying the principles of law which this court feels should be applied to this case.

The policy of insurance contains the following clause:

"I agree to accept the Policy issued hereon and that the same shall not take effect until the first payment shall have been made and the Policy issued and actually delivered to me during my continuance in good health."

The main question in this case, in the opinion of this court, is the question as to whether a valid and legal policy ever was issued and actually delivered to the insured, Myrtle May Steinsultz. It is argued that the clause in question is a condition precedent and requires that the insured shall be in good health at the time of the payment of the first premium and the actual delivery of the policy to her, otherwise that the policy never became operative and for the purposes of this suit is void. It will be noticed that plaintiff in presenting his main case made no effort to submit or show anything as to the health of the insured prior to the claimed delivery of the policy. If the clause in question is a condition precedent to recovery, which we shall discuss later, the general issue filed by the defendant denied the existence of a valid policy and raised this question and required proof on the part of the plaintiff to show that the insured was in good health at the time of the claimed delivery of the policy. No such proof was shown and the defendant, appellant, at the close of plaintiff's case, moved the court to instruct the jury, under the pleadings and evidence

in the case, to find a verdict for the defendant and a form of verdict was submitted with the motion. This motion the court overruled, to which ruling appellant duly excepted and this issue is therefore squarely raised by the proceedings as to the existence of a legal and binding policy in this case under the terms of said contract.

In *Ellis v. State Mut. Life Assur. Co. of Worcester,* 206 Ill. App. 226, the appellant insurance company filed a plea of the general issue with notice of special matter of defense, the special matter being that the policy was not to be in effect until actually delivered and the first premium paid during the lifetime of the assured, and while he was in the same condition of health as when his application was signed, and that the policy was not so delivered. There was a trial, verdict and judgment in favor of appellee, being the amount of the policy and interest. To reverse said judgment the appellant prosecuted appeal. In this case the application, signed by Ellis, contained, among other things, the following provision: "That the contract or policy applied for shall not take effect until the first premium thereon shall have been actually paid and the policy delivered to me during my lifetime and the present condition of health."

The policy issued thereon contained this provision: "This policy shall not take effect until actually delivered and the first premium paid thereon during the lifetime of the insured."

Said policy contained the further provisions: "This policy and the application therefor shall constitute the entire contract between the parties hereto."

In this case, likewise, the appellant at the close of appellee's evidence and then again at the close of all the evidence, moved the court to direct a verdict in its favor. Appellant objected to the admission of the policy, sued upon, in evidence. In this case on December 14, 1914, the insured was injured and was carried to his home and died between 4:30 and 5 p. m. on that

208   APPELLATE COURTS OF ILLINOIS.

Steinsultz v. Illinois Bankers Life Assn., 229 Ill. App. 199.

day, and it appears that the policy of insurance had been returned to the office of the agent of the insurance company the evening before but had not been delivered personally to the insured at the time of his death. In this case the contention was made by the holders of the policy that the delivery to the agent was a delivery to the insured.

The court goes into the question in the *Ellis* case very exhaustively, quoting from a great many cases and quoting from *Devine v. Federal Life Ins. Co.*, 250 Ill. 203, in which the Supreme Court in discussing the question of the delivery of an insurance policy, at page 206, says:

"The application may or may not provide that the insurance shall take effect only upon the delivery of the policy to the insured. Unless expressly made so by the contract itself, an actual delivery of a policy of insurance to the insured is not essential to the validity of the contract, and the rule under such circumstances is that a policy becomes binding upon the insurer when signed and forwarded to the insurance broker to whom the application for insurance was made, to be delivered to the insured."

And quoting 25 Cyc. 718, 719, it is stated with reference to the delivery of insurance policies that: "The placing of the completed policy in the hands of the agent for delivery, without condition, to the insured completes the contract, though the actual delivery by the agent to the insured is not made before the death of the insured. But if the delivery to the agent of the company is with the understanding that it is to be delivered by the agent to the insured only after the performance of some condition, then, until the condition is performed and it becomes the duty of the agent to deliver the policy to the insured, the contract is not complete. * * * It is a usual condition of a life insurance policy that the delivery shall not be effectual to create a binding contract unless the insured is alive and in good health when the policy is

delivered and the first premium paid, and under such conditions the death of the insured before the delivery of the policy will prevent its becoming effectual.''

It was held in the *Ellis* case that in view of the foregoing authorities, numerous of which we have not cited here, that the policy sued on was never delivered and that the court erred in not directing a verdict in favor of appellant and reversed the judgment with a finding of fact.

In *Weber v. Prudential Insurance Co. of America,* 284 Ill. 326, the policy contained a clause as follows: ''And said policy shall not take effect until the same shall be issued and delivered by the said company and the first premium paid thereon in full while my health is in the same condition as described in this application.''

It was contended by appellee in that case that by reason of this clause the policy was not in force until it was actually delivered during the lifetime and good health of the insured, whereas the appellant contended that as the premium was paid in full on March 8, the contract of insurance became effective and in force as insurance when the application was accepted by appellee, and that an actual, manual delivery of the policy was not necessary. The court held, page 329: ''The only evidence as to the time when the application was accepted is the date of the policy and the fact that it was issued upon its date, March 21. The contract would then have become in force had the applicant's condition of health been the same as when he made his application. The fact is that his health had not only become seriously impaired, but on that date it had become apparent that there was no possibility of his recovery and that he was about to die. Under the provisions of the clause of the application above set out the contract of insurance never was in force and appellee was not liable for the amount of the policy.''

In *Daniels Motor Sales Co. v. New York Life Ins. Co.,* 220 Ill. App. 83, the policy of insurance contained

210 APPELLATE COURTS OF ILLINOIS.

Steinsultz v. Illinois Bankers Life Assn., 229 Ill. App. 199.

this clause: "I agree as follows: that the insurance hereby applied for shall not take effect unless the first premium is paid and the policy delivered to and received by me during my lifetime and good health."

The court says: "There is no evidence to be found in the record that Brinkman was in good health on the day of the delivery of the policy to plaintiff's president. On the contrary, there is an admission in the opening statement of plaintiff's case that Brinkman was ill with pneumonia at Los Angeles three days prior to such delivery and died that following day from that disease."

There was a further provision in the policy that this policy and the application therefor, copy of which is attached hereto, constitute the entire contract. The court in this condition of the record, lacking, as it did, proof that Brinkman was in good health when the policy was delivered, refused to admit it in evidence, and on motion of defendant instructed a verdict in its favor. Plaintiff contended that proof of the ill health of Brinkman was a matter of affirmative defense, but the court held with defendant that proof of the fact of good health was a condition precedent to the right of recovery, that the onus of such proof primarily rested upon plaintiff, and that without such proof there could be no recovery; and the court in the decision of that case held that the clause in the application was a condition precedent and that it was incumbent upon the plaintiff to prove affirmatively that Brinkman was in good health at such time before it could recover upon the policy. Quoting *Ellis v. State Mut. Life Assur. Co. of Worcester, supra; Weber v. Prudential Ins. Co. of America, supra;* and quoting *Continental Ins. Co. v. Rogers,* 119 Ill. 474, in which it is held that it is incumbent upon plaintiff to prove performance of all conditions precedent, the court saying in relation thereto: "Such promissory conditions in the contract as he has undertaken to perform are known to the law as condi-

tions precedent, and if they have not been waived or dispensed with by the defendant, the plaintiff is bound, at his peril, to aver and prove them on the trial. This elementary rule of law applies as fully to actions on policies of insurance as to any other class of cases."

It is held in *Crosse v. Supreme Lodge Knights and Ladies of Honor*, 254 Ill. 80, on p. 84: "Parties competent to contract are at liberty to enter into such agreements with each other if they see fit, and it is the purpose of the law and the function of the courts to enforce their contracts. Accordingly, the rule established in this State is that where an application for life insurance is expressly declared to be a part of the policy and the statements therein contained are warranted to be true, such statements will be deemed material whether they are so or not, and if shown to be false there can be no recovery on the policy however innocently the statements may have been made."

It is true that courts will construe such statements as representations in place of warranties in all such cases where they can be so construed, and not do violence to the specific wording of the contract made by the parties.

The language in the policy in question, "I agree to accept the Policy issued hereon and that the same shall not take effect until the first payment shall have been made and the Policy issued and actually delivered to me during my continuance in good health," is a condition precedent to the existence of any binding legal contract of insurance upon the appellant. It means just what it says and it was entered into and signed by the insured. The statement was a warranty that the insured was in good health at the time she signed said application and further was a binding obligation that she should continue in good health and should be in good health at the time the policy was delivered to her, otherwise the policy never should become binding and obligatory. It is a condition that goes to the very existence of the policy and its validity,

and under the facts in this case it is insisted strenuously that no binding policy was ever issued and delivered by the appellant.

The appellee, to meet the evidence of disease, portions of which have been set out in this opinion, offered testimony of no medical witnesses or physicians, or of any witness having knowledge or skill in the treatment of disease. Various neighbors, mostly women acquaintances of the insured, were offered in rebuttal to show the physical appearance of the insured at and prior to the time of the claimed delivery of this policy of insurance. On the other hand, the evidence of Dr. Myers, Dr. Smith, Dr. Parsons and Dr. Hall is absolute and convincing that the insured as early as 1916 was suffering from gall stones and gall stone colic and Dr. Myers treated her continuously for that disease from 1916 down until and during the year 1919. Within six months after the signing of this application the insured was compelled to undergo an operation in which six gall stones were found solid and in size from one-third to a half an inch in diameter. The evidence of Dr. Smith, and of Dr. Hall especially, is absolute that such a condition existing in the system of the insured was not a matter of formation during months but of formation during years, and Dr. Hall says that gall stones are very slow in their formation, especially those that are of a solid type. "It takes a long time for them to form. It is a question, I would say, of years rather than months. Just how long it would take to form a stone of a certain size I do not know, but it is a long time." It is undisputed under all the testimony in this case that this condition was in existence in 1916 and Dr. Myers was then treating the insured for that ailment.

Various other assignments of error are made by appellant as to instructions and as to other errors committed upon the trial, but we can see no occasion to prolong this opinion by a discussion of such errors in view of the condition of the record as we have herein-

before recited it. A new trial of this case would be futile and but take up the time of courts and juries which are already too much clogged. For the errors in the record herein pointed out, the judgment of the lower court must be reversed.

*Judgment reversed with finding of facts.*

Finding of facts to be embodied in the judgment: We find as an ultimate fact that the policy in question was never delivered to Myrtle May Steinsultz or to any person in her behalf while or during the time that she, Myrtle May Steinsultz, was in good health.