## Jennie Laughlin, Appellee, v. North America Benefit Corporation, Appellant.

### Gen. No. 8,049.

1. INSURANCE—*alleging and proving compliance with mutual insurance certificate provision for delivery to one in good health as precedent to recovery.* The provision of a certificate or policy in a mutual benefit association that the insurer shall not be liable for any benefit to the applicant until the certificate is delivered to and accepted by the applicant, while the latter is in good health, is valid and enforceable, and a condition precedent to the beneficiary's recovery on the policy, which must be alleged in the declaration and proved.

2. INSURANCE—*failure of declaration for insurance to allege compliance with condition precedent to recovery as ground for directed verdict or arrest of judgment.* A declaration for recovery on a mutual benefit certificate of which acceptance by the applicant while in good health is a condition precedent, which fails to allege compliance with the condition does not state a cause of action, and the court should instruct the jury to find a verdict for the defendant and should arrest the judgment on defendant's motion.

3. INSURANCE—*what mutual benefit certificate gives no legal claim.* A certificate of a mutual benefit association which promises nothing except to ask other members of the same class as a member decedent to make free will contributions to a certain limit in favor of the named beneficiary creates no legal claim in favor of the certificate holder.

4. INSURANCE—*when beneficiary cannot compel payment of certificate entailing no legal obligation.* The courts are not under duty to correct the morals of litigants by compelling a mutual benefit association to make good the face of its certificate after receiving premium payments from the insured by alluring statements, in absence of any legal obligation towards the certificate holder.

5. INSURANCE—*insured's misrepresentations as to.her health and age as avoiding injustice of denying validity of mutual benefit certificate.* Under preponderating evidence showing that one who secured a certificate from a mutual benefit association was over the age claimed and was not in sound health at the time, even though such matters were not in issue because of failure to allege in the declaration that the certificate was received by an applicant in good health, no distinct injustice was done the beneficiary by holding that the certificate contained no legal obligation of the association to pay anything on the certificate.

Appeal by defendant from the Circuit Court of Champaign county; the Hon. FRANKLIN H. BOGGS, Judge, presiding. Heard in this court at the October term, 1926. Reversed with a finding of fact. Opinion filed April 22, 1927. Rehearing denied and opinion modified and refiled June 24, 1927.

DOBBINS & DOBBINS, for appellant.

GREEN & PALMER, for appellee; GEORGE E. MARTIN and ORIS BARTH, of counsel.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

Appellee, beneficiary under a contract for benefits issued by appellant to her mother, Mary E. Cedusky, brought her suit upon her mother's death in the cir-

cuit court of Champaign county, in assumpsit, to recover the apparent face value of the contract or policy amounting to the sum of $1,000. Appellee, in her declaration, set out the policy and certain by-laws of appellant as follows:

"North America Benefit Corporation

"410 South Sixth Street, Springfield, Illinois.

"No. 10130.                                    Age 64.

"In consideration of the payment of five dollars charter fee, the receipt of which is hereby acknowledged, and the further future contributions hereinafter mentioned, entitles Mary E. Cedusky of Champaign, Illinois (hereinafter called the member), to all the benefits of this corporation, and in the event of death of said member entitles Jennie Laughlin of Champaign, Illinois, named as beneficiary, to an amount not to exceed the sum of

"One thousand dollars.

"Subject, however, to the conditions herein named, and it is understood that any benefits mentioned in this policy are conditioned that prompt and full payment by the member be made to The North America Benefit Corporation at its office in Springfield, Illinois, of any and all contributions that may become due hereon pursuant to the provisions of the application for this policy and the by-laws of this Corporation.

"And provided further, that the holder of this contract shall have fully complied with the conditions and agreements contained in the application, and in this certificate, and in the by-laws and articles of agreement of The North America Benefit Corporation.

"In Witness Hereof, the signature of the president and secretary, and the seal of The North America Benefit Corporation is affixed at Springfield, Illinois, this first day of July, 1924.

"A. C. Littlejohn, President,

"(Seal)          H. P. Mohay Rechner, Secretary."

Appended to the policy or contract, as set up in the declaration, is a complete copy of the by-laws of the corporation, which, so far as material on this appeal, are as follows:

"By-Laws.

"Article I.

"The Association—Its Name and Membership.

"Sec. 2. Membership—Any person, male or female, between the ages of ten and sixty-five years, inclusive, at nearest birthday, of good moral character, if accepted by the corporation, may become a member of this corporation by signing the application and by paying a membership fee and one assessment in advance.

"Sec. 3. Certificate—When an application is accepted by this corporation and the membership fee and one assessment in advance are paid, the corporation will issue to such applicant a certificate, but no liability shall arise thereon against the corporation, nor any benefit be due to the applicant until the issuance of such certificate and its delivery to and acceptance by the applicant while such applicant is in good health.

"Article IV.

"Section 1. Amount of Benefits—The maximum death benefits under any certificate issued by this corporation shall be $1,000.00, which amount is subject to conditions hereinafter named.

"Article V.

"Section 1. When a death shall occur in the class in which this contract is issued and the corporation is liable therefor, it shall be the duty of each member of this class to make a contribution, which contribution will be one dollar. This is the only time a contribution is required, except for expenses. No member

will be called upon to contribute to the expense of the corporation in excess of three dollars in any twelve-months period. These expense assessments shall be made at the discretion of the board of directors. The directors, if they deem it necessary, may call for a reserve contribution which shall never exceed $1.00 per member and the amount of this reserve shall never exceed $1.00 for each member in the class of which the contract holder is a member.

## "Article VI.

"Section 1. Benefits—Upon the death of any member of this corporation, if such member shall at the time of his death be in good standing and shall have complied with all the laws, rules and regulations of this corporation, and upon proofs of death duly submitted to the corporation, the corporation will pay the maximum benefit of $1,000.00, provided same is in the reserve at the time of death; if it is not in reserve at the time of death a contribution will be called for from each member of the class of which the contract holder is a member. Any benefits mentioned in these by-laws or anywhere in the contract issued are conditioned upon the same being collected from the members if the same is not already on deposit in the reserve and the total liability of this corporation shall not in any case exceed a sum equal to one dollar for each member in good standing or shall not exceed the amount collected from the remaining members of the class of which the contract holder is a member.

## "Article IX.

## "Notice of Assessment.

"Section 1. Upon the death of any member of this corporation who is in good standing, and information of such fact be given to the secretary of this corporation, as provided in Section 1 Article VIII, it shall be

the duty of said secretary to promptly notify all members of the class in which such death occurs, of the fact that a contribution is due and shall mail said notice to each member of such class, at the postoffice address last furnished in writing by such member to said secretary, and this shall constitute and be a legal and lawful notice to each member of such class of said assessment. Every member of this corporation shall, within fifteen days after the mailing of any notice of assessment, pay the amount thereby assessed against him or her and a failure so to do shall *ipso facto* suspend the member so failing from all rights and benefits in this corporation.

"All payments made by any member now or hereafter are voluntary gifts or donations for the purpose of aiding members of this corporation and to take care of expense of the said corporation."

Mary E. Cedusky signed an application and made the payments required on July 1, 1924, and the declaration charges that she did, during her lifetime, keep, perform and comply with all the terms, provisions and conditions of the "said policy of insurance" upon her part to be kept and performed by the terms thereof, and that she, Mary E. Cedusky, died on April 19, 1925, and that on April 28, 1925, appellee gave to appellant notice of the death of said Mary E. Cedusky, "by means whereof the defendant then and there became liable to pay to the plaintiff, to wit the sum of $1,000," etc., "together with interest," etc.

Appellee did not set out the application signed by Mary E. Cedusky as a part of the declaration, and there is a great deal of contention in the briefs and arguments as to whether certain statements in said application constituted warranties or were mere representations, a determination of all of which we do not deem necessary to a proper conclusion of the case. We do insert certain clauses and provisions of the application, introduced in evidence by appellant, for

the purpose of shedding light upon the real nature of the contract and amplifying the meaning of certain phrases found in the contract itself.

The application provided:

"North America Benefit is not an insurance company, but a corporation organized under the laws of Illinois, chartered by the Secretary of State. Its purpose is to create an estate of $1,000 for each of its members for the protection and relief of those dependent on them. This corporation will furnish this protection at actual cost, and all benefits will be paid promptly after proof of death is received at the home office.

"There is absolutely no 'red tape,' no medical examination is required. The contract is in full force and effect as soon as the first payment is received at the home office and contract issued. Men, women and children in good health, between the ages of 10 and 65 years, are eligible. Members will be divided in classes of one thousand each; there will be numerous classes, but no more than one thousand in any one class. The charter membership fee is $5.00. This amount puts your certificate in force at once. The future payments will be only $1.00 each time a member dies. There will be no other expense whatsoever, except a small payment two or three times per year for expense of the corporation, which payment, under no circumstances, will exceed one dollar.

"It is understood and agreed by the appellant that the value and conditions of the certificate to be issued on this application shall be as follows, and that all payments made now or hereafter are voluntary gifts or donations for the purpose of aiding and assisting members of this corporation and to take care of expenses incidental to same.

"The applicant hereby agrees to pay any contributions of which he is notified and it is hereby agreed and understood that contributions will be called for

as follows: One dollar for death of each member in the class in which this policy is issued. There will be no other expenses whatsoever except a small contribution two or three times a year for the expense of the corporation which shall not exceed one dollar each time.

"It is hereby provided and mutually agreed that this application shall be considered as part of the contract for membership and should this application be accepted and the certificate issued thereon, I hereby accept the by-laws and regulations with all amendments governing the corporation and hereby appoint and constitute A. C. Littlejohn of Springfield, Illinois, and his successor in office, to be my lawful attorney in fact, and, in my stead, is hereby authorized and empowered to cast my vote at any meeting called, and at the annual election for the election of directors and on any question arising for consideration, which I might legally cast if present, which power of authority shall continue in force during the life of this certificate."

The application further stated that the applicant was born in 1860 and was, therefore, 64 years of age. The application, signed on June 25, 1924, stated that applicant did not have any of a different list of diseases, including lung trouble and asthma, or any other diseases, and that she had received no medical attention during the past two years and declared and agreed that she was in good and vigorous health, and that the statements were made and the application signed for the purpose of procuring membership in said corporation.

The application also contained certain effusive statements upon the back, such as:

"Some people think that when they go out of this world that the Lord will provide for his dependents. If you believe this, go through all the poorhouses of the country, then you will see how God provides for

the neglected children and other dependents. That is, He provides for them through public charity. As for yourself, you had rather the Lord would provide for yours in a private home which your forethought had provided.''

''WHEN YOU ARE THROUGH—WHAT THEN?

''Some day, when you have passed out of this life, a friend will lay a lily on your chest, heap praise and kindly tribute upon what is left of you, lay you away and proceed to forget you. *When you pass into the unknown* will your *dependents* be *protected? The time to decide is now—by filling out the application, mailing same to home office of the corporation with five dollars* ($5.00) attached, which will create an estate at once for not to exceed one thousand dollars for your loved ones.''

In the application the defendant company states:

''COULD YOU LOSE? NO!

''*All money for benefits is deposited in banks, held in trust by the management and can be used only for the payment of benefits. The amount due the dependents of the deceased member is no deposit or will be collected at once and check will be mailed promptly after proof of death is received at home office of the corporation.*''

All of which statements are of the nature and strongly tend to mislead and pervert the mind of the aged, feeble and inert. However, it is distinctly denied by appellee in this case that her mother, the member, signed the application, knew anything about it, or that it formed any part of the contract.

Appellant demurred to the declaration generally, which was overruled and appellant filed a plea of the general issue, with a plea of tender to appellee for the sum of ten dollars and the accrued costs, amounting to the sum of $13.50. There were various other

special pleas filed, demurrers and replications, upon which hearings were had. Appellant filed six special pleas as follows:

The *first* special plea alleged that the deceased, Mary E. Cedusky, did not during her lifetime keep, perform and comply with all the terms, provisions and conditions of said policy of insurance, upon her part to be kept and performed, and concluded to the country, upon which plea issue was joined.

The second, third, fourth, and fifth special pleas each averred the execution of the application and the *second* averred the statements in the application and that the deceased did have a disease of the lungs and bronchial tubes, known as bronchitis, at the time of executing said application, which was a contributing cause of her death a few months later.

The *third* was based upon medical attention had by deceased during the last two years of her life, and the *fourth,* upon the statement in the application that the deceased was in good and vigorous state of health at the time of signing said application, and the *fifth,* that the applicant was born in 1854 and not in 1860 and was therefore 70 years of age at the time of signing said application.

Appellee filed replications to said special pleas and averred that the applicant did not herself, or through an agent, execute the said application and did not make the statements set out in said special pleas and concluded to the country. A demurrer to these replications was overruled and issue joined on the averments in the replications. There was a second replication to the fifth special plea, denying that the deceased was above the age of 65 years at the time of signing said application, to which a demurrer was filed, overruled and an issue joined on said replication.

There was a sixth special plea alleging that said contract was procured by appellee and at her instance and was not procured by the deceased, and that said

contract was a pure gambling contract. Appellee, by replication, denied the allegations in the sixth special plea and issue was formed on this plea.

Appellant by leave of court filed the seventh and eighth special pleas; the *seventh* set out the charter powers of appellant and showed the purposes of the corporation: "To unite fraternally all reputable persons who are in good health, 10 to 65 years of age, inclusive. Not for pecuniary profit, but for the purpose of giving relief to those depending on its members, and to aid its members who become totally disabled, all such aid to be voluntary contributions and not by fixed dues or assessments" and the plea avers that at the time of issuing said certificate the deceased was above the age of 66 years and that appellant had no power to issue the said certificate. The plea further sets out the payments by the deceased or the plaintiff, and avers the tender and prays judgment. The *eighth* special plea is the same and avers that at the time said deceased attempted to become a member of said corporation and said certificate was issued, the said deceased "was not in good health" and appellant had no power to issue said certificate and prayed judgment.

Appellee replied to the seventh special plea, averring the deceased to be between 10 and 65 years of age at the time of issuing said certificate, and an issue was made upon said replication. The court sustained a general and special demurrer to the eighth special plea. We have set out the pleadings fully to show the issues, genuine or feigned, upon which this cause was tried and shall discuss them further in connection with some of the evidence in the case.

On the trial appellant objected to the introduction of the certificate or contract in evidence on the ground that "appellee had failed to show a compliance with the conditions precedent mentioned in that paper," and appellant further objected: "They have not

shown that they have paid the amount required by
the application and they have not offered the applica-
tion in evidence and they have not shown a compliance
with the by-laws, all of which are conditions precedent
to any recovery whatsoever under the contract.'' At
the close of plaintiff's evidence appellant moved the
court to instruct the jury to find a verdict for ap-
pellant, which was denied. There was a verdict in
favor of appellee in the sum of $1,049.34, a motion for
a new trial, which was denied and a motion in arrest
of judgment, which was denied, to which exceptions
were taken and appellant has properly preserved its
rights by assignments of error.

From reading this record it seems impossible that
counsel on either side could have argued these mo-
tions in the court below, or judgment would not have
been entered in that court. Appellee pleads the con-
tract and the by-laws of the association as a part of
the contract, in which it is provided:

''No liability shall arise thereon against the cor-
poration, nor any benefit be due the applicant until
the issuance of such certificate *and its delivery to and
acceptance by the applicant, while such applicant is
in good health.*''

This is a condition precedent of appellee's right
of recovery and must be alleged in the declaration
and established by proofs of appellee. There is no
allegation in the declaration averring the delivery of
the certificate while the applicant was in good health
or as to the health of decedent in any manner at any
time. Such contracts are lawful and may be enforced.
(*Hartsock v. Kaskaskia Livestock Ins. Co.,* 223 Ill.
App. 437, citing *Rose v. Mutual Life Ins. Co.,* 240 Ill.
51; *Devine v. Federal Life Ins. Co.,* 250 Ill. 206.) There
was no issue in the case as to whether or not the cer-
tificate or policy was delivered to the deceased and
accepted by her while she was in good health. The al-
legation and proof constituted a condition precedent

and should have been alleged and proved. (*Rockford Ins. Co. v. Nelson,* 65 Ill. 415; *Carbone v. Pennsylvania Fire Ins. Co.,* 222 Ill. App. 564, and other cases cited.)

The declaration did not state a cause of action and the court should have instructed the jury to find a verdict for the defendant and should have arrested the judgment. (*Steinsultz v. Illinois Bankers Life Ass'n,* 229 Ill. App. 199; *Weber v. Prudential Ins. Co. of America,* 284 Ill. 326; *Ellis v. State Mut. Life Assur. Co. of Worcester,* 206 Ill. App. 226, and *Daniels Motor Sales Co. v. New York Life Ins. Co.,* 220 Ill. App. 83, and many other cases.) Why the parties to this suit should have carried on moot litigation over the feigned issues growing out of the second, third, fourth and fifth special pleas in regard to the application, which appellee contends her mother never executed, and in regard to statements by deceased, which appellee contends her mother never made, is beyond the comprehension of this court. It seems impossible that the demurrer to the declaration could have been argued and overruled. Appellant in the eighth special plea, stating a conclusion, undertook to raise the issue as to the delivery of the policy while the deceased was not in good health. This was demurred to and sustained and it seems strange that applicant did not ask to carry the demurrer back to the declaration. It is not, however, the only strange feature of the case.

An equally serious question arises in this case as to the allegations in the declaration and whether they charge any promise or liability against appellant which is not fulfilled. The pleaded contract or certificate in the declaration contains no promise, covenant or agreement to pay appellee anything. It states that upon certain payments being made the deceased, Mary E. Cedusky (the member) becomes entitled to all the benefits of the corporation, appellant, and upon her death the appellee becomes entitled as beneficiary to an amount not to exceed the sum of $1,000, subject,

however, to the conditions herein named, and, it is understood that any benefits mentioned in this policy are conditioned that prompt and full payment by the member be made to appellant of any and all contributions that may become due hereon, pursuant to the provisions of the application for this policy and the by-laws of this corporation.

In the first by-law cited by appellee in her declaration, one can only become a member by signing the application. In this case appellee contends that her mother never signed any application and under her declaration, therefore, her mother, the deceased, was not a legal member. This is not an insurance company but an association of members formed, not for pecuniary profit, for the following purpose:

"To unite fraternally all reputable persons who are in good health, 10 to 65 years of age, inclusive. Not for pecuniary profit, but for the purpose of giving relief to *those depending on its members,* and to aid its members who become totally disabled, *all such aid to be voluntary contributions and not by fixed dues or assessments.*"

It may be here pertinent to state that nothing in the declaration or the proof indicates that appellee was in any manner dependent upon the member, her mother, but the proof shows the contrary.

The corporation, appellant, consists of all these members, reputable, who have united fraternally, not for pecuniary profit but for the purpose of giving relief to those depending upon its members—*all such aid to be voluntary contributions and not by fixed dues or assessments.* The corporation is not some distinct entity, separate and apart from the members, but it is the united membership of Mary E. Cedusky, in her lifetime and the thousand other dupes who paid their money into the lap of a president, secretary, treasurer and board of directors, usually constituted in one person, their "universal" attorney in fact.

That the spirit and intent of the charter was fully carried out in the by-laws is shown by an examination of the same. Article 4, section one, provides: "That maximum death benefits under any certificate issued by this corporation shall be $1,000.00 which amount is subject to conditions hereinafter named." Article 5, section one, provides that, "when a death shall occur in the class in which this contract is issued and the corporation is liable therefor, it shall be the duty of each member of this class to make a contribution, which contribution shall be $1.00." The section further provides for expenses and article 6, section one, provides that when a death occurs of a member in good standing, etc, "the corporation will pay the maximum benefit of $1,000.00, provided same is in the reserve at the time of death; if it is not in reserve at the time of death a contribution will be called for from each member of the class of which the contract holder is a member. *Any benefits mentioned in these by-laws, or anywhere in the contract issued are conditioned upon the same being collected from the member,*" etc.

This clause, together with the last clause of section one, article nine, as follows: "All payments made by any member, now or hereafter, are voluntary gifts or donations for the purpose of aiding members of this corporation and to take care of expense of the said corporation," form the contract entered into by the deceased, and to which she made contributions. There are other provisions but none which vary the terms of the contract. It is a mutual, voluntary organization of members which pledge to each other their moral aid, but waive all legal rights, unless there be a reserve fund, which each member has agreed should be a voluntary gift or donation and in which no member, either living or dead, would have greater right than another unless it should be voluntarily turned over. Could the Red Cross Society, another charitable organization, any more carefully protect itself from legal

assault? Under the terms of this certificate appellee's mother became one of a class of 1,000, so devoted to each other that each pledge the other, not by contract, but as a free will offering and gift—donation—to contribute the sum of one dollar to each member of the class that should die, and evidently there was no escaping from one class into another because the application provided: "Members will be divided in classes of 1,000 each; there will be numerous classes but no more than 1,000 in any one class."

The Massachusetts Supreme Court, in *Burdon v. Massachusetts Safety Fund Ass'n*, 147 Mass. 360, 17 N. E. 879, said:

"However fallacious and visionary the hopes inspired by this form of life insurance might be, and however ill-advised its provisions, we find nothing to vary the rights of the parties, as ascertained from the terms of the contract into which they have allowed themselves to enter. The court cannot act as a special providence to protect one class in particular, where all are or may be losers. All we can do is to take the contract as we find it. It follows that upon the death of a member no attachment could be made of the safety fund, nor any action at law be maintained against the association, unless upon a refusal to lay an assessment upon the holders of certificates in force. The actions which were brought appear to have been brought under the misconception that the association had bound itself to pay $1,000. It had only bound itself to lay an assessment, and to pay over the amount collected thereon. For a refusal to lay such an assessment it may be that an action at law would lie; but the more appropriate remedy would be by a proceeding in equity to compel the association to lay the assessment."

Substantially the same holding has been made in this State in *New Home Life Ass'n of Illinois v. Hagler*, 23 Ill. App. 457; *Abe Lincoln Mut. Life & Accident Soc.*

*v. Miller,* 23 Ill. App. 341, and *Ring v. United States Life & Accident Ass'n,* 33 Ill. App. 174. In the last case cited it is held (page 174):

"In suits on certificates of benefit societies, there seems to be some contrariety in the decisions. The contracts of the different corporations differ in form. Some are absolute in the promise to pay a certain sum upon the member's death. Others provide that upon the death of the member the company shall only pay over the proceeds of certain assessments, not to exceed a stipulated amount. In this later class of cases, 'it is not entirely agreed what remedy is most proper, if the association denying its liability refuses to levy the promised assessment, for the authorities are not in harmony. * * * The decided preponderance of authority is in favor of the view that an action at law can be maintained against the society for a refusal or neglect to make the assessment.' Bacon, Benefit Societies, Sec. 453, and cases there cited.

"The certificate sued on in this case, differs essentially from those in cases cited by counsel for defendant in error. In nearly all said cases the contract is not absolute for the payment of a certain amount, but is that the association shall levy an assessment and pay the proceeds thereof, not exceeding the amount named in the certificate to the beneficiary. Such cases are: *Smith v. Covenant Mutual Benefit Ass'n* 24 Fed. 685; *Bailey v. Mutual Benefit Ass'n* 71 Iowa 689; *Newman v. Covenant Mut. Ben. Ass'n* 72 Iowa 242; *Burdon v. Mass. Safety Co.* 17 N. E. Rep. 874; *Eggleston v. Association* 5 McCrary, 484; *Curtis v. Mutual Benefit Life Company* 48 Conn. 98.

"In most of said cases the question decided was the sufficiency of the allegations in the declaration or complaint at law, and if the contract here sued on was similar in its terms to the contracts on which the actions in said cases were brought, the decisions would

be authorities in support of defendant in error's second contention, which is that the demurrer was well sustained for the reason that the declaration does not aver that an assessment had been made and collected, or the number of members liable to assessment, and the amount that could have been made by an assessment.''

In the *Abe Lincoln Mut. Life & Accident Soc. v. Miller, supra,* the court held on page 346.

''But plaintiffs' declaration is fatally defective; no sum is named in it, for which defendant became liable under the terms of the contract. The certificate referred to in the declaration is not a part of the declaration, and if it had been properly made a part thereof, the sum to be paid by plaintiff in error to the beneficiaries upon the death of Miller could be made definite and specific only by proper averments of facts showing that it was a duty of plaintiff in error to make assessments upon members; that such assessments would produce a sum to which plaintiffs became entitled, under the contract, to receive; in short the declaration should contain sufficient averments to show a cause of action; this it fails to do and the omission is not cured by the verdict, (*Commercial Ins. Co. v. Treasury Bank,* 61 Ill. 485), and may be taken advantage of by motion in arrest of judgment or in error. *Kipp v. Lichtenstein,* 79 Ill. 358, and cases therein cited.''

Even the cases cited are not in point under a certificate, which has no foundation for laying a legal assessment. In the case at bar there is no such foundation, and the society could only ask for a free will contribution or donation. The member in her policy waived or never had any legal claim.

Appellee cites *Rockhold v. Canton Masonic Mut. Ben. Society,* 129 Ill. 440; *Railway Conductors Ben. Ass'n v. Robinson,* 147 Ill. 138; *Zeman v. North American Union,* 263 Ill. 304; *Martin v. Stubbings,* 126 Ill.

387; *Covenant Mut. Life Ass'n v. Ketner,* 188 Ill. 431, and *Metropolitan Acc. Ass'n v. Windover,* 137 Ill. 417, as authority for the doctrine that in mutual and benevolent associations, upon the faith of a promise made by the society, a member may enforce the liability of the society and the burden of proof is upon the society to show by plea and proof any reductions to be made. We have examined all of these cases and the charter and by-laws upon which they are founded. In each case the liability of the society and its members is based upon an absolute promise to pay, which fixes a definite liability. In *Martin v. Stubbings, supra,* the contract of the association and the member was an express promise to pay and the court held:

"A mutual benefit society is not a life insurance company in the restricted sense in which that term is used in our statute in relation to life insurance companies, nor is a certificate of membership in such society a policy of life insurance in the same restricted sense of the term, yet it is manifest that such membership certificate is in the nature of a mutual life insurance policy. *Commonwealth v. Wetherbee,* 105 Mass. 161; *State v. Benevolent Society,* 72 Mo. 146; *Supreme Commandery v. Ainsworth,* 71 Ala. 436; *Sherman v. Commonwealth,* 82 Ky. 102; *State v. Vigilant Ins. Co.,* 30 Kan. 585; *State v. Northwestern Mutual Life Ins. Co.,* 16 Neb. 549; *State v. Mutual Benefit Association,* 18 id. 276; *Illinois Masons' Benevolent Society v. Winthrop,* 85 Ill. 537; *Illinois Masons' Benevolent Society v. Baldwin,* 86 id. 479; *Niblack on Mutual Benefit Societies,* 193. Such contracts are therefore subject to the rules of law governing life insurance policies, except so far as those rules must be held to be modified by the peculiar organization, objects and policy of such societies."

In *Railway Passenger & Freight Conductors' Mut. Aid & Benefit Ass'n v. Robinson, supra,* the court, construing the contract, said:

"There can be no doubt, we think, that the benefits provided for by the constitution and by-laws of the association are in the nature of life insurance, and that the contract between the association and the member, evidenced by the constitution, by-laws and membership certificate, is, in substance, a policy of insurance upon the life of the member. See *Rockhold v. Canton Masonic Benevolent Society,* 129 Ill. 440, and cases cited. It is true the membership certificate bears upon its face no promise of indemnity, but it entitles the holder to membership in the association and to all rights that appertain thereto, and it is to be construed in connection with the constitution and by-laws, the same as though all of those documents were combined in one. Taken together, they constitute an undertaking on the part of the association, subject it is true to certain conditions which will be hereafter noticed, in case of the death of a member, on proper proof of his death, to levy and collect an assessment of $2.50 on each surviving member, and to pay the same over, to an amount not exceeding $2500, to a certain designated beneficiary or beneficiaries. This is clearly, in substance and effect, a contract of insurance, and an association organized for the purpose of entering into and performing contracts of that character, is in reality an insurance company."

In *Metropolitan Safety Fund Acc. Ass'n v. Windover, supra,* the policy provided: "After reciting that, for certain considerations particularly enumerated, said association thereby issued said certificate to said George Windover in the principal sum of $1500, it was provided that said sum, less the amount of all weekly indemnity previously received, should be paid to Phoebe Windover whose relationship to said member was that of mother, or her legal representatives, within ninety days after satisfactory proofs should be received at the home office, setting forth that the mem-

ber, during the continuance of said contract, had sustained bodily injuries from external, violent or accidental causes, within the intent and meaning of said certificate and the conditions thereto annexed, and that such injuries alone had occasioned death within ninety days from the date of such accident. In a subsequent part of the certificate however is the following: 'Provided, that in case the amount realized from one full assessment of all the certificate holders liable should be insufficient to pay the face value of this certificate when, by reason of death, it shall become a claim, then the beneficiary herein shall accept the result of such assessment, less the amount of all weekly indemnity benefits previously received, as payment in full of all claims against the association under this certificate of membership.' *  *  *

"The first point raised is, that under the evidence, the plaintiff, if entitled to recover at all, should have been allowed to recover only nominal damages. This contention is based upon the assumption that the contract evidenced by the membership certificate is merely to levy and collect one full assessment upon all the certificate holders of the class to which George Windover belonged, and to pay the avails of such assessment over to the plaintiff as the beneficiary named in the certificate, and that as it is impossible to establish by evidence the sum that would have been realized from such an assessment if it had been made, no substantial damages should have been awarded, the plaintiff's proper remedy being in a court of equity by a bill for a specific performance of the contract to levy and collect the assessment."

In this case the court held that the beneficiary could recover the full sum of $1,500 mentioned in the certificate "unless the defendant has shown by its pleadings and proofs that the amount which would be realized by one full assessment on all the certificate holders liable, would have been insufficient to pay the face

value of the certificate, in which case the amount of re-
covery should be abated.''

These cases and each of them present a different
state of facts than the case at bar, where the appellant
by the terms of its contract has relieved itself from
all liability except in case of death or disability, and
then only to ask for a contribution and each member,
including the deceased, Mary E. Cedusky, has relieved
himself and herself from all liability and agreed that
any and all sums paid, of every kind, shall be merely
voluntary gifts and donations. In none of the cases
cited by appellee is the law as to gifts and donations
construed. Counsel has brought to our attention some
of the persuasive and alluring statements in the ap-
plication, and argued their fraudulent purport and
measures to defraud, unless this certificate is construed
as a binding promise to pay. With this phase of the
case we have nothing to do. It is an argument that
should be presented to the legislature or the adminis-
tration department that grants charters to such or-
ganizations. It is not the duty of courts to correct the
morals of litigants.

Turning to the facts in this case, the certificate was
based upon an application which represented that
Mary E. Cedusky was born in 1860 and was therefore
only 64 years of age at the time the certificate was
issued, in July, 1924. Some of her own family, broth-
ers and sisters, who had known her all her life, testi-
fied that she was born in 1852 or 1854 and that she
was above the age of 70 years in July, 1924. The
deceased was married at Suttons Bay, Michigan, on
December 30, 1874. The certificate of the priest who
performed the marriage ceremony and the county
court records of Leelanau county, Michigan, properly
authenticated, were produced, showing the marriage
of Mary E. Cedusky on December 30, 1874, and stating
that she was nineteen years of age. If she, then, at
her marriage, gave her age truthfully she must have

been born in 1855 and would therefore have been 69 years of age in 1924.

On May 12, 1915, the deceased, Mary E. Cedusky, signed an application for insurance to the Prudential Insurance Company of America, stating that she was born on October 10, 1852, and was then 63 years of age. Appellee's certificate of marriage in Champaign county, Illinois, was in evidence, showing that she was married on August 28, 1895, and was twenty-one years of age. If the deceased, Mary E. Cedusky, was under 65 years of age on July 1, 1924, she must have been married at the early age of fifteen years. The records and the testimony of her relatives render the verdict finding the deceased was under 65 years of age on July 1, 1924, manifestly against the weight of the evidence. A son of the deceased, John Cedusky, testified that his mother lived with him from 1911 until she died; that during the later years of her life she suffered from bronchitis and asthma; that she coughed all the time; she was coughing and spitting out slime—all yellow slime—and that this condition had existed since 1917 and that during the two years prior to June 25, 1925, Dr. Christie had visited her about four times. Dr. Christie made out the proofs of death, under oath, on April 28, 1925, in which he stated that the remote cause of death was bronchitis from which she had suffered one year, and that the immediate cause of death was myocarditis. He stated that she had chronic bronchitis. While the issue of the delivery of the certificate to the member, while in good health, was not before the jury, and the issue of false representations as to being in good, sound health at the time of signing the application, could not have been before the jury, if the jury did not believe the deceased signed the application, still we cannot believe, in view of all the testimony and exhibits in this case that our construction of the certificate in question is distinctly an injustice to the appellee, nor that it deprives her of any of her

vested rights. The appellant apparently is beyond the reach of courts in cases of this kind. The judgment of the circuit court of Champaign county will be reversed with a finding of fact.

*Reversed with a finding of fact.*

Finding of fact to be incorporated in the judgment: The evidence does not show that the appellee has a right to recover on the benefit certificate involved in this case.